**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-1558**

VIJAYA PRAKASH BOGGALA,

Petitioner,

v.

JEFFERSON B. SESSIONS III, Attorney General,

Respondent.

------------------------

PROFESSOR KACI BISHOP, of UNC Law School; NATIONAL IMMIGRATION PROJECT OF THE NATIONAL LAWYERS GUILD; NORTH CAROLINA JUSTICE CENTER,

Amici Supporting Petitioner.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: March 21, 2017                    Decided: August 9, 2017

Before WILKINSON, DIAZ, and FLOYD, Circuit Judges.

Petition denied by published opinion. Judge Floyd wrote the majority opinion, in which Judge Wilkinson joined. Judge Diaz wrote a separate dissenting opinion.

**ARGUED**: Helen Parsonage, ELLIOT MORGAN PARSONAGE PLLC, Winston-Salem, North Carolina, for Petitioner. Tim Ramnitz, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF**: Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division, Shelley R. Goad, Assistant Director, Jennifer A. Singer, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. Sejal Zota, NATIONAL IMMIGRATION PROJECT OF THE NATIONAL LAWYERS GUILD, Boston, Massachusetts, for Amici Curiae.

———————————

FLOYD, Circuit Judge:

Vijaya Boggala, a citizen and native of India, petitions this Court for review of an order from the Board of Immigration Appeals (BIA), which found him both removable and inadmissible on the basis of his North Carolina deferred prosecution agreement for soliciting a child by computer to commit a sex act. Because the BIA properly found Boggala removable and inadmissible for being convicted of a crime involving moral turpitude, we deny Boggala's petition for review.

I.

A.

We begin with a brief overview of the relevant statutory scheme contained in the Immigration and Nationality Act (INA). An alien who is a permanent resident of the United States can lose permanent resident status upon a finding of removability, based on the criteria for removability listed in INA § 237, 8 U.S.C. § 1227. Once an alien is found removable, the alien may attempt to reobtain permanent resident status by requesting an adjustment of status under INA § 245(a), 8 U.S.C. § 1255(a). To obtain an adjustment of status, the alien must be found to be admissible. The criteria that render an alien inadmissible are found in INA § 212, 8 U.S.C. § 1182. If an alien is found to be inadmissible under certain provisions of INA § 212, the alien may apply for a waiver of inadmissibility pursuant to INA § 212(h), 8 U.S.C. § 1182(h). If the alien has committed a crime that is "violent or dangerous," then a heightened standard applies to the § 212(h)

waiver application, requiring "extraordinary circumstances" for the waiver to be granted. 8 C.F.R. § 1212.7(d).

B.

We now turn to the facts of this case. Boggala is a 37-year-old doctor who completed medical school in India; he traveled to the United States in 2007 with a valid visa to prepare for and participate in a residency at a hospital in Greensboro, North Carolina. In 2008, Boggala married a United States citizen, and in 2009, he adjusted his status to that of a lawful permanent resident based on his marriage.

On January 12, 2012, Boggala initiated a conversation in a chatroom with an individual who used the screenname "JennAngel2010." A.R. 778. "JennAngel2010" told Boggala that she was a 14-year-old girl living in Fayetteville, North Carolina. Unbeknownst to Boggala, "JennAngel2010" was actually an undercover police officer. During this first conversation, Boggala attempted to arrange a meeting with "JennAngel2010" for that day. He also told her that he wanted to have sex with her and made a variety of other sexually explicit remarks.

Boggala and "JennAngel2010" continued to have sexually explicit conversations for about 19 days, and eventually made plans to meet on January 31, 2012. On January 31, Boggala drove from Greensboro to Fayetteville, and arrived at the parking lot where he had arranged to meet "JennAngel2010." He was then taken into custody by the police. He had four condoms in his pocket when he was apprehended. When interviewed by the

4

police, Boggala—who was 31 years old at the time—admitted that he believed that "JennAngel2010" was only 14 years old.

Boggala was charged by criminal information with soliciting a child by computer to commit an unlawful sex act in violation of N.C. Gen. Stat. § 14-202.3(a). On August 14, 2012, Boggala and his attorney met with the prosecutor. During this meeting, Boggala waived indictment by signing the criminal information (the "Information"). The Information alleged that Boggala engaged in conduct that constitutes the offense of soliciting a child by computer to commit an unlawful sex act, and listed relevant factual details such as Boggala's age (31), the child's age (14), and the location where they were going to meet. A.R. 816. Also during the meeting, Boggala entered into a deferred prosecution agreement pursuant to N.C. Gen. Stat. § 15A-1341(a1), which established that the state of North Carolina would defer prosecution of the crime in exchange for Boggala's fulfillment of certain conditions. A.R. 818–819.

Later that day, a deferred prosecution hearing was held in North Carolina Superior Court. At that hearing, the court told Boggala:

> Sir, you are admitting responsibility and stipulating to the facts to be used against you and admitted into evidence without objection in the state's prosecution against you for this offense should prosecution become necessary as a result of these terms, that is, if you do not complete the terms of this agreement. Do you understand that?

A.R. 826. Boggala responded, "Yes." *Id.* The court then accepted the deferred prosecution agreement and placed Boggala on supervised probation for twelve months.

Because of Boggala's offense, the Department of Homeland Security (DHS) apprehended Boggala on February 26, 2013, and issued him a notice to appear for

5

removal proceedings. DHS charged Boggala with removability as (1) an alien convicted of an aggravated felony under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii); and (2) an alien convicted of a crime involving moral turpitude under INA § 237(a)(2)(A)(i), 8 U.S.C. § 1227(a)(2)(A)(i).

On March 12, 2013, Boggala appeared at a preliminary hearing before an immigration judge (IJ) and denied that he was removable as charged. Boggala filed a motion to terminate his removal proceedings, arguing that his deferred prosecution did not constitute a "conviction" for immigration purposes and that, in any event, his offense did not qualify as an aggravated felony or a crime involving moral turpitude. DHS filed in opposition, and submitted into evidence the Information, the deferred prosecution agreement, and the transcript from the deferred prosecution hearing.

On January 30, 2014, the IJ denied Boggala's motion to terminate proceedings, based on a determination that Boggala was removable under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), for being convicted of an aggravated felony. A.R. 214. The IJ reserved judgment on whether Boggala was additionally removable under INA § 237(a)(2)(A)(i), 8 U.S.C. § 1227(a)(2)(A)(i), for being convicted of a crime involving moral turpitude. A.R. 214 n.2. Boggala then indicated that he intended to apply for relief from removal through an application for adjustment of status in conjunction with a § 212(h) waiver of inadmissibility.

On October 8, 2014, Boggala conceded that his offense qualified as a crime involving moral turpitude, rendering him removable; however, he argued that his offense did not render him inadmissible because it was subject to the petty offense exception

6

under INA § 212(a)(2)(A)(ii)(II), 8 U.S.C. § 1182(a)(2)(A)(ii)(II),[1] and that for this reason, he did not need to apply for a § 212(h) waiver. The IJ disagreed, and on March 3, 2015, found that Boggala's conviction was for a crime involving moral turpitude and that the petty offense exception did not apply, rendering Boggala inadmissible. As a result, Boggala was required to apply for a § 212(h) waiver. The IJ adjourned the proceedings to allow the parties to brief whether Boggala's crime was "violent or dangerous" such that the heightened "exceptional and extremely unusual hardship" standard of 8 C.F.R. § 1212.7(d) would apply to his request for a § 212(h) waiver.

On May 18, 2015, after briefing, the IJ found that Boggala was removable as charged and that his offense was "dangerous," which meant that the heightened hardship standard applied to his request for a § 212(h) waiver of inadmissibility. The IJ then found that this standard had not been met, and consequently denied Boggala's § 212(h) waiver request. In the alternative, the IJ denied the waiver request as a matter of discretion. As a result, Boggala was ordered removed to India.

On June 16, 2015, Boggala filed an appeal with the BIA. On May 3, 2016, in a detailed single-member opinion, the BIA affirmed each aspect of the IJ's decision and dismissed Boggala's appeal. Boggala then timely petitioned this Court for review.

---

[1] INA § 212(a)(2)(A)(ii)(II), 8 U.S.C. § 1182(a)(2)(A)(ii)(II), as relevant here, states that an alien is not rendered inadmissible by a conviction for a crime of moral turpitude if the alien has committed only one crime, and "the maximum penalty possible for the crime of which the alien was convicted (or which the alien admits having committed or of which the acts that the alien admits having committed constituted the essential elements) did not exceed imprisonment for one year."

## II.

Notwithstanding the limitations on review of discretionary denials of relief and certain final removal orders found in INA § 242(a)(2)(B)(i) & (a)(2)(C), 8 U.S.C. § 1252(a)(2)(B)(i) & (a)(2)(C), this Court still has jurisdiction to review questions of law and constitutional claims associated with such rulings, INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D). We conduct this review de novo. *Amos v. Lynch*, 790 F.3d 512, 517 & n.3 (4th Cir. 2015). Where, as here, the BIA "affirmed the IJ's order and supplemented it," we review "the factual findings and reasoning contained in both decisions." *Niang v. Gonzales*, 492 F.3d 505, 511 n.8 (4th Cir. 2007).

## III.

Boggala argues that (1) his North Carolina deferred prosecution does not qualify as a "conviction" under the INA; (2) the phrase "crime involving moral turpitude" is void for vagueness; (3) his crime was not an "aggravated felony;" and (4) his crime was not "violent or dangerous" within the meaning of 8 C.F.R. § 1212.7(d). We find each of these arguments unpersuasive or insufficient to warrant relief.

## A.

Boggala first argues that his North Carolina deferred prosecution does not qualify as a "conviction" under the INA. The INA defines a "conviction" as "a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where . . . the alien . . . has admitted sufficient facts to warrant a finding of guilt." INA § 101(a)(48)(A)(i), 8 U.S.C. § 1101(a)(48)(A)(i). Thus, the relevant question here is

whether Boggala has "admitted sufficient facts to warrant a finding of guilt." *Id.*[2] The definition of "conviction" contained in the INA applies to the question of both Boggala's removability and his inadmissibility, as both issues turn on whether he has been "convicted" of a crime involving moral turpitude. *See* INA § 237(a)(2)(A)(i), 8 U.S.C. § 1227(a)(2)(A)(i) (removability); INA § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I) (inadmissibility).

In the past, this Court has interpreted § 101(a)(48)(A)(i) strictly, refraining from expanding the meaning of "conviction." In *Crespo v. Holder*, we were presented with an adjudication where a judge had found sufficient facts to support a finding of guilt; however, the judge did not actually find the alien guilty, and the alien did not admit to any of the facts. 631 F.3d 130, 134 (4th Cir. 2011). Because this scenario did not satisfy any of the criteria described in § 101(a)(48)(A)(i), we refused to deviate from the text, and held that the adjudication did not qualify as a conviction. *Crespo*, 631 F.3d at 136.

By that same logic, in this case we must find that Boggala has truly made factual admissions "sufficient . . . to warrant a finding of guilt." INA § 101(a)(48)(A)(i), 8 U.S.C. § 1101(a)(48)(A)(i). The mere fact that he admitted responsibility is not by itself sufficient to meet this standard. *See Iqbal v. Bryson*, 604 F. Supp. 2d 822, 826 (E.D. Va. 2009) (holding that a New York Pretrial Diversion Agreement under which an alien had

---

[2] INA § 101(a)(48)(A)(ii), 8 U.S.C. § 1101(a)(48)(A)(ii), also requires "some form of punishment, penalty, or restraint on the alien's liberty to be imposed." Boggala does not dispute that this element is satisfied here.

accepted responsibility—but had made "no other reference to the facts underlying the charges"—was not a "conviction").

1.

We first address the question of whether Boggala made factual admissions during the deferred prosecution process. During the deferred prosecution hearing, the court told Boggala, "you are admitting responsibility and *stipulating to the facts to be used against you* and admitted into evidence without objection in the state's prosecution against you for this offense should prosecution become necessary . . . . Do you understand that?" A.R. 826 (emphasis added). Boggala then responded, "Yes." *Id.* We believe that this exchange constitutes a factual stipulation. Specifically, it is a stipulation to the facts contained in the Information.[3]

It is clear that the court was referring to the facts in the Information when it spoke of the "the facts to be used against" Boggala. A.R. 826. In its question, the court used the phrase, "*the* facts." By using the definite article "the," the court made clear that it

---

[3] We note that the deferred prosecution agreement is not by itself a sufficient "admission of facts," given that it seems to merely describe the anticipated admission of responsibility and stipulation to take place during the hearing. *See* A.R. 818 ("The admission of responsibility given by me and any stipulation of facts shall be used against me and admitted into evidence without objection in the State's prosecution against me for this offense should prosecution become necessary as a result of these terms and conditions of deferred prosecution."). In contrast, at the hearing the court spoke in the present tense when informing Boggala that "you are admitting responsibility and stipulating to the facts to be used against you." A.R. 826. It is therefore evident that the stipulation occurred in the course of that exchange.

was referencing a concrete, existing set of facts.[4] The Information was the only defined set of facts in existence, and thus the only set to which the court could have been referring. Moreover, given that Boggala replied "Yes" to the court's question, A.R. 826, indicating that he understood it, we cannot presume that the question contained a nonsensical reference to a non-existent set of facts.

Additionally, when indictment is waived and a case proceeds upon a criminal information, as happened here, it is the criminal information exclusively that defines the factual allegations in a case. The criminal information's very purpose is (1) to define the criminal conduct that the prosecution must prove at trial, *see* N.C. Gen. Stat. § 15A-642(a); N.C. Gen. Stat. § 15A-921; and (2) to inform the defendant of the specific factual allegations that have been levied against him, *see* N.C. Gen. Stat. § 15A-924(a)(5) (requiring that a criminal information include "[a] plain and concise factual statement in each count . . . [made] with sufficient precision clearly *to apprise the defendant . . . of the conduct which is the subject of the accusation*" (emphasis added)). The criminal information's fact-defining function in criminal proceedings thus confirms our understanding that the court was referencing the Information when it spoke of "the facts to be used against" Boggala. A.R. 826.

Moreover, just as it is clear that the court was referring to the Information in its question to Boggala, it is also clear that Boggala's affirmative response to the court's

---

[4] In contrast, the deferred prosecution agreement contained the more open-ended phrase "any facts," A.R. 818, which implies that a set of facts might or might not exist.

11

question was made with full knowledge of both the contents and function of the Information. Boggala and his attorney had received and signed the Information earlier that very day, during the same meeting in which Boggala signed the deferred prosecution agreement. This was the only account of the facts that was presented to Boggala before the deferred prosecution hearing. Moreover, Boggala was made aware that if his case went to trial, he would be tried on the basis of the Information. *See* A.R. 816 ("I, the undersigned defendant, waive the finding and return into Court of a Bill of Indictment and agree that the case may be tried upon the above information."). Boggala's confirmation during the hearing that he was stipulating to "the facts to be used against" him was therefore made with knowledge of the contents of the Information, as well as knowledge of its significance. A.R. 826. We thus conclude that his confirmation was a meaningful one.

At bottom, Boggala was informed in writing of the facts to be used against him, and then later that same day stated that he was stipulating to the facts to be used against him. He cannot now claim that this stipulation was without significance. We therefore find that Boggala stipulated to the facts in the Information during his deferred prosecution hearing.

2.

Having found that Boggala stipulated to the facts in the Information, we must next determine whether this stipulation is "sufficient . . . to warrant a finding of guilt." INA § 101(a)(48)(A)(i), 8 U.S.C. § 1101(a)(48)(A)(i). The Information alleged in factual

12

detail that Boggala had committed conduct that violated each element of N.C. Gen. Stat. § 14-202.3(a). A.R. 816. Boggala thus stipulated to the facts underlying each element of the crime. We find this sufficient to warrant a finding of guilt. *Cf. United States v. DeFusco*, 949 F.2d 114, 120 (4th Cir. 1991) (upholding a finding of a factual basis for a guilty plea where defendant signed and then verified in court a statement of facts that "set[] forth each element of the offense and the facts to support each of the [relevant] counts"). We therefore uphold the BIA's determination that Boggala's deferred prosecution agreement was a "conviction" under the INA.

B.

Next, Boggala argues that the phrase "crime involving moral turpitude" is void for vagueness, and that he therefore should not have been found to be removable and inadmissible for having committed a crime involving moral turpitude under INA § 237(a)(2)(A)(i), 8 U.S.C. § 1227(a)(2)(A)(i) and INA § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I).[5] A statute violates the Due Process Clause of the Fifth Amendment if it is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015).

---

[5] It is unclear whether an alien is allowed to bring a vagueness challenge to admissibility laws. *See Beslic v. I.N.S.*, 265 F.3d 568, 571 (7th Cir. 2001) ("[I]t is doubtful that an alien has a right to bring [a vagueness] challenge to an admissibility statute." (discussing *Boutilier v. I.N.S.*, 387 U.S. 118, 123–24 (1967))). We assume for the sake of argument that Boggala can make such a challenge because, as discussed below, we believe that Boggala's vagueness challenge is without merit.

In *Jordan v. De George*, the Supreme Court addressed whether the phrase "crime involving moral turpitude" is void for vagueness in the context of crimes involving fraud. 341 U.S. 223, 223–24 (1951). The Court concluded that the phrase was not unconstitutionally vague in the fraud context, *id.* at 232, and also made the more general pronouncement that "[t]he phrase 'crime involving moral turpitude' presents no greater uncertainty or difficulty than language found in many other statutes repeatedly sanctioned by the Court," *id.* at 231 n.15. We see no reason to depart from this assessment. Moreover, Boggala has not provided evidence of unworkability surrounding this phrase comparable to what the Supreme Court has previously relied upon to hold a statute unconstitutionally vague. *See Johnson*, 135 S. Ct. at 2558 (holding the residual clause of the Armed Career Criminal Act void for vagueness due to "hopeless indeterminacy" and "repeated attempts and repeated failures to craft a principled and objective standard"). We therefore reject Boggala's claim that the phrase "crime involving moral turpitude" is void for vagueness in the removability and admissibility contexts.[6]

## C.

Boggala further argues that his crime did not constitute a "violent or dangerous" crime within the meaning of 8 C.F.R. § 1212.7(d), and that therefore his request for a

---

[6] Boggala additionally argues that his conviction was not an "aggravated felony," and thus he should not have been found to be removable under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii). Because we hold that he was properly found to be removable for having committed a crime involving moral turpitude, we need not reach this issue.

§ 212(h) waiver of inadmissibility should not have been subjected to a heightened standard. We need not consider this argument, however, because Boggala's request for a § 212(h) waiver was alternatively denied on discretionary grounds. The IJ held that even assuming that Boggala was not required to meet the heightened standard for a § 212(h) waiver, his application would still be denied as a matter of discretion. The BIA upheld this determination, and Boggala has not challenged this holding. Thus, we need not consider his argument regarding the "violent or dangerous" standard, given that the BIA's unchallenged holding dictates that even if Boggala's crime was not considered "violent or dangerous," his application would still be denied.

## IV.

Boggala was properly found removable and inadmissible based on his conviction of a crime involving moral turpitude. Boggala's petition for review is therefore

*DENIED*.

DIAZ, Circuit Judge, dissenting:

Boggala's deferred prosecution agreement counts as a conviction for immigration purposes only if he "admitted sufficient facts to warrant a finding of guilt." 8 U.S.C. § 1101(a)(48)(A)(i). Specifically, we must consider whether Boggala's signature on the "Information" document, his checkmark on the deferred prosecution agreement form, and his statements at the deferred prosecution hearing constitute the admission of sufficient facts upon which a North Carolina court could find Boggala guilty of a crime. Because the answer is no, I respectfully dissent.

## I.

Boggala's signature on the "Information" document comes below the line: "WAIVER: I, the undersigned defendant, waive the finding and return into Court of a Bill of Indictment and agree that the case may be tried upon the above information." A.R. 816. That signature is not a stipulation to any facts or an admission of guilt. Instead, it merely allowed the State of North Carolina to dispense with the requirement of securing a bill of indictment. *See* N.C. Gen. Stat. § 15A-923 ("An information and a bill of indictment charge the crime or crimes in the same manner. An information has entered upon it or attached to it the defendant's written waiver of a bill of indictment."); *cf. State v. Jones-White*, No. COA06-1402, 2007 WL 2034115, at *1 (N.C. Ct. App. July 17, 2007) (defendant waived return of a bill of indictment and agreed to be tried upon an information and then proceeded to trial where state presented evidence to prove the information).

Boggala also checked box 5 of the deferred prosecution agreement form, which states:

> The admission of responsibility given by me and any stipulation of facts shall be used against me and admitted into evidence without objection in the State's prosecution against me for this offense should prosecution become necessary as a result of these terms and conditions of deferred prosecution.

A.R. 818. But as the majority recognizes, the deferred prosecution agreement form itself contains no stipulated facts. *See* Majority Op. at 10 n.3. Rather, it merely lists the offense description ("solicit child by computer to commit sex act"), the offense date, and the maximum term of imprisonment.

Nor did Boggala stipulate to any facts at his deferred prosecution hearing. Instead, the following exchange took place:

> The Court: Sir, you are admitting responsibility and stipulating to the facts to be used against you and admitted into evidence without objection in the state's prosecution against you for this offense should prosecution become necessary as a result of these terms, that is, if you do not complete the terms of this agreement. Do you understand that?
>
> The Defendant [Boggala]: Yes.

A.R. 826. All Boggala did at the hearing was respond "yes" after the state court judge read aloud almost verbatim the language in box 5 of the deferred prosecution agreement form next to which Boggala placed his checkmark. It stands to reason that if Boggala's checkmark next to box 5 isn't enough to make out a stipulation, then Boggala's response to the state court judge's inquiry shouldn't be enough either.

My friends in the majority make much of the fact that during the colloquy the judge used the definite article "the" before "facts to be used against you . . . should

17

prosecution become necessary" instead of the indefinite pronoun "any," which appears in the analogous part of the deferred prosecution agreement form. According to the majority, this grammatical switch in time saved the day by making it "evident that [a] stipulation occurred." *See* Majority Op. at 10 n.3. I cannot agree.

To accept the majority's premise, we must first assume that the judge intentionally used "the" in the way the majority understands it—as a reference to the Information, "the only defined set of facts in existence"—and second that Boggala understood as much. *See* Majority Op. at 11. Nothing in the record supports either assumption. In fact, the only time the judge even referred to the Information was in the following prefatory exchange with the assistant district attorney:

> The Court: If [Boggala's charge] is a lesser included [charge], why do we need a bill of information?
>
> Mr. Paschal: It has not been indicted, ma'am. It's still in district court.
>
> The Court: Okay. All right. Madam Clerk, if you would swear the defendant, please.

A.R. 823.

In my view, it's equally if not more likely that as the judge read aloud the language in box 5 to Boggala, she simply revised some clauses that would have otherwise sounded nonsensical, given that she was the one speaking. Indeed, the judge's entire colloquy with Boggala followed the same pattern—the judge repeated in order and almost verbatim the language on the deferred prosecution agreement form, pausing where appropriate to allow Boggala to respond "yes" or "no." Put simply, Boggala did not adopt a statement of facts during his colloquy with the state court judge, nor did the judge

18

identify one. To hold otherwise, the majority interprets what's at best an ambiguous exchange between Boggala and the state court judge as one filled with intention. That view of things, however, is not supported by North Carolina law.

There are five nonexclusive statutory grounds in North Carolina for finding a sufficient factual basis for a plea: "(1) A statement of the facts by the prosecutor. (2) A written statement of the defendant. (3) An examination of the presentence report. (4) Sworn testimony, which may include reliable hearsay. (5) A statement of facts by the defense counsel." N.C. Gen. Stat. § 15A-1022(c). None exist here.[1] Additionally, in determining whether there is a sufficient factual basis the "judge may consider any information properly brought to his [or her] attention." *State v. Sinclair*, 270 S.E.2d 418, 421 (N.C. 1980) (internal quotation marks omitted). Nonetheless, what the judge "does consider . . . must appear in the record, so that an appellate court can determine whether the plea has been properly accepted." *Id.*

Critically, that a judge theoretically could have had a piece of information in mind when making a factual basis determination doesn't satisfy *Sinclair*'s requirement that the consideration appear on the record. In *State v Flint*, for example, the defendant pleaded guilty to 68 felonies, 2 misdemeanors, and a habitual felon charge. 682 S.E.2d 443, 445

---

[1] The Information, for example, is not a statement of facts by the prosecutor. *See State v. Williams*, 684 S.E.2d 898, 900 (N.C. Ct. App. 2009) (acknowledging a difference between allegations constituting an Information and "a statement of the facts by the prosecutor"); *cf. Sinclair*, 270 S.E.2d at 421 (holding that North Carolina's "Transcript of Plea itself" does not "provide a factual basis for [a] plea" because "[a] defendant's bare admission of guilt . . . always contained in such transcripts[] does not provide the 'factual basis' contemplated by [N.C. Gen. Stat. §] 15A-1022(c)").

(N.C. Ct. App. 2009). "The prosecutor then submitted a written factual basis for the plea listing [47] felonies to which defendant stipulated." *Id.* at 446. On appeal, the defendant challenged the sufficiency of the factual basis for his plea. The court of appeals vacated the trial court's judgment because there was "insufficient evidence to demonstrate that each guilty plea had a proper factual basis." *Id.* at 452. "[T]he record indicate[d] that the trial court relied solely on the factual basis document presented by the State in determining the factual basis" for the plea, and the prosecutor's statement of facts did not cover all of the charges to which the defendant pleaded guilty. *Id.*

Notably, the court refused to go beyond what appeared on the face of the record in determining whether a sufficient factual basis existed. So for example, while the presentence report might have contained a relevant factual basis, there was no "indication that an examination of the presentence report was conducted." *See id.* The State's argument "that the indictments for each of the charges provide[d] the factual basis for the [21] felonies not found in the factual basis document" failed for the same reason:

> While it is true that the indictments are contained in the record on appeal, it is not clear if they were, in fact, before the trial court during defendant's plea. The trial court, in its factual basis determination, never mention[ed] the indictments and only refer[red] to the State's factual basis document.

*Id.* at 453.

As in *Flint*, the Information in this case was in the record when the judge reviewed the deferred prosecution agreement form with Boggala. But there's no indication that the judge examined the Information or otherwise incorporated it into her colloquy with Boggala. Her cursory reference to the Information, when placed into context, cannot

suffice—she merely asked the assistant district attorney why the document existed. Simply put, there's no bridge between the judge's reference to "the facts to be used against [Boggala] . . . should prosecution become necessary" and the Information other than pure speculation.[2]

## II.

In sum, there is no factual basis sufficient to warrant a finding of guilt against Boggala. Instead, all that exists on this record is that Boggala entered into a deferred prosecution agreement for the offense of soliciting a child by computer to commit an unlawful sex act in violation of N.C. Gen. Stat. § 14-202.3(a). The listing of the offense and offense date and the admission of "responsibility" do not qualify as a "conviction" for immigration purposes because they could not support a judicial finding of guilt. To hold otherwise requires that we speculate, draw inferences against Boggala, and effectively carry the government's burden for it.

---

[2] The speculation necessary to make sense of the colloquy means that it would also fail to satisfy Federal Rule of Criminal Procedure 11(b)(3)'s requirement that "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." *Compare United States v. DeFusco*, 949 F.2d 114, 120 (4th Cir. 1991) (Rule 11 satisfied where defendant "provided the court with a signed statement of facts which he admitted on the record was an accurate representation of what happened"), *with United States v. Mastrapa*, 509 F.3d 652, 659 (4th Cir. 2007) (Rule 11 not satisfied where magistrate judge recommended that the district court accept the defendant's guilty plea based on the erroneous conclusion that there was a sufficient factual basis for it, and the district court, "recogniz[ing] th[e] failure that had occurred in the Rule 11 proceeding, . . . recharacterized that hearing as one on an *Alford* plea" but didn't "explain[] an *Alford* plea to [the defendant or] enlist[] his agreement to enter into one"). Here, the majority engages in the same type of post hoc analysis we frowned upon in *Mastrapa*.

This I am unwilling to do.  I respectfully dissent.